# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 1:17-cr-0232-DAD-BAM |
| Plaintiff, | FINDINGS AND RECOMMENDATIONS GRANTING GOVERNMENT'S MOTION TO ENFORCE THE SECURED BOND |
| v. | |
| EVELYN MAGALLON, | ECF No. 33, 67 |
| Defendant. | |

This matter is before the Court on Sureties' Application to Reconvey Real Property Held as Security for Bail Bond and to Avoid Forfeiture (ECF No. 33) by Sureties Juan Guerrero and Yesenia Guerrero ("Sureties" and/or "Guerrero") and the Government's Motion to Enforce the Secured Bond. (ECF No. 67.) The Government is seeking to forfeit the bond because Defendant Evelyn Magallon absconded from pretrial supervision on March 30, 2018. The issue before the Court is whether the full equity property bond securing Defendant Evelyn Magallon's appearance, secured by Guerrero's real property, is forfeited, or whether the Court should exercise its discretion to relieve the forfeiture.

Having carefully reviewed the parties' briefs as well as the Court's entire file, and after considering the testimony and documentary evidence submitted at the two-day evidentiary hearing and the arguments of counsel, the Court makes the following Findings and Recommendations.

1

**I.     Factual and Procedural Background**

    A.  Underlying Charges and the Bond

On September 25, 2017, Defendant Evelyn Magallon (hereafter "Defendant" or "Defendant Magallon") made an initial appearance on a criminal complaint charging her with Conspiracy to Possess with Intent to Distribute 50 grams of Methamphetamine or 500 grams of a Mixture or Substance Containing a Detectable Amount of Methamphetamine, a Scheduled II Controlled Substance and Possession with Intent to Distribute 50 grams of Methamphetamine or 500 grams of a Mixture or Substance Containing a Detectable Amount of Methamphetamine, a Scheduled II Controlled. (ECF No. 1, 10.) Also charged in the complaint was Fredy Figueroespino, her husband. (ECF No. 1.) Defendant pled not guilty, was temporarily detained, and a detention hearing was set for October 3, 2017. (ECF No. 13, 14.)

At the detention hearing on October 3, 2017, Magistrate Judge Oberto engaged in a colloquy with the proposed third-party sureties, Juan Guerrero, assisted by a Spanish language interpreter, and Yesenia Guerrero.  Judge Oberto inquired of the Sureties whether they understood that they will lose their property if the Defendant did not follow her conditions of release. In court, the Sureties stated they understood and agreed they were willing to post property as collateral.  (ECF No. 14.)  At the October 3, 2017 detention hearing, Plaintiff was released pursuant to an order setting conditions of release which included appointment of third-party custodians and an $200,000 appearance bond secured by property owners Yesenia Guerrero and Juan Guerrero. (ECF Nos. 45, 48, 49.) The Court's minutes indicate that:  "Defendant ordered RELEASED to 3rd party custodians Flora Magallon Rangel & Jose Miguel Salgado; a Full Equity property bond of not less than $200,000 and on pretrial conditions including the surrender of Defendant's passport. <u>Property owners Yesenia Guerrero and Juan Guerrero both acknowledged they understand the risk of posting their property as collateral</u>." (ECF No. 14 (emphasis added).)

On October 3, 2017, Sureties signed the Appearance and Compliance Bond.  (ECF No. 25.) The Appearance and Compliance Bond specifically notified Sureties of potential forfeiture: "This appearance bond may be forfeited if the defendant does not comply with the above

2

agreement.  The court may immediately order the amount of the bond surrendered to the United States, including the security for the bond, if the defendant does not comply with the agreement." (ECF No. 25, p.1.)  The Appearance and Compliance Bond also informed the Sureties of the duration of the bond: "The court may order this appearance bond ended at any time. This bond will be satisfied and will be released when either: (1) the defendant is found not guilty on all charges, or (2) the defendant reports to serve a sentence." (ECF No. 25, p. 2.)  Further, the Sureties acknowledged that they had read and understood the terms and agreed to the terms of the Appearance and Compliance Bond:  "*Acceptance:* I, the defendant – and each surety – have read this appearance bond and have either read all of the conditions of release set by the court or had them explained to me.  I agree to the Appearance and Compliance Bond."  (ECF No. 25, p. 2.) While the property bond was being processed, Defendant remained in custody.  (ECF No. 23, 24.)

On October 10, 2017, Defendant Magallon appeared for Arraignment on an Indictment which charged her with Conspiracy to Distribute and to Possess with Intent to Distribute Methamphetamine and Possession with Intent to Distribute Methamphetamine.  (ECF No. 23.) Defendant entered a not guilty plea and was ordered to appear at a status conference on November 27, 2017. Then, on October 13, 2017, the property bond and deed of trust by the Sureties were filed.  (ECF No. 26, 27.)  Defendant was released from custody, subject to numerous conditions, including the property bond and location monitoring.  (ECF No. 24, 25.) Defendant appeared at status conferences on November 27, 2017 and February 26, 2018.

On March 30, 2018, a pretrial release violation petition was filed; and an arrest warrant issued for Defendant Evelyn Magallon for violating her conditions of pretrial release. (ECF No. 30.)  The petition alleged Defendant had absconded:

> On March 30, 2018, at approximately 12:02pm., this officer received an alert from our federally contracted location monitoring company advising of a strap tamper.  Pretrial Services was unable to make contact with Ms. Magallon, and she did not have permission to leave her residence. Upon speaking with the defendant's third party custodians, Jose Salgado and Flora Magallon, it was determined the defendant had left her home and current whereabouts are unknown.

(ECF No. 30.)  Pretrial Services Officer Ryan Beckwith signed the petition for Pretrial Services Officer Darryl Walker. (*Id.*)  As of the date of this order, Defendant remains a fugitive.

3

B. <u>Applications to Reconvey Security</u>

On May 2, 2018, Sureties Yesenia Guerrero and Juan Guerrero filed an Application to Reconvey Real Property Held as Security for Bail Bond and to Avoid Forfeiture. (ECF No. 33.) The Government filed an opposition to the motion, and the Sureties filed a reply. (ECF No. 35, 36.) The Government and the Sureties agreed to numerous continuances of the hearing on the motion. The Court then set the matter for hearing on July 9, 2021. At the hearing on July 9, 2021, Sureties requested testimony by several Pretrial Services Officers, and the Court continued the matter to October 25, 2021 for an evidentiary hearing. (ECF No. 62, 66.)

On August 14, 2021, the Government filed a Motion to Enforce Secured Bond. (ECF No. 67.) Sureties filed an opposition to the motion, and the Government filed a reply. (ECF No. 68, 70.)

C. <u>Evidentiary Hearing</u>

The Court held an in-court evidentiary hearing over two days, October 25 and November 29, 2021. Sureties appeared by Counsel Daniel Harrelson, and the Government appeared by Assistant United States Attorney Alyson Berg. The following witnesses testified: Third-Party Custodian Flora Magallon,[1] Surety Yesenia Guerrero, Third-Party Custodian Jose Salgado, Pretrial Services Officer Darryl Walker (by video), Pretrial Services Officer Renee Basurto (by video), Pretrial Services Officer Ryan Beckwith (by video), Deputy Marshal Brian Ink and Deputy Marshal Michael Garcia.

The Court admitted into evidence Exhibits 1, A, 3, 4, 5, 6, 13, 14 (p.124-31) and 19. At the evidentiary hearing, Sureties explained the various attempts they undertook to attempt to learn what happened, where Defendant absconded to, and to retrieve Defendant. Through their efforts, Surety Yesenia Guerrero ("Yesenia") learned Defendant absconded to Mexico with her children who had been brought to Mexico by Defendant's mother in advance of Defendant's date of flight. Yesenia learned that $5,000 had been deposited into an account of Defendant's aunt, that

---

[1] Third-Party Custodian Flora Magallon is Defendant Evelyn Magallon's aunt. Sureties are not related to the Defendant and are friends of Flora Magallon. Flora Magallon testified with the assistance of a Spanish language interpreter.

4

withdrawals were made in the days leading up to Defendant fleeing, and $1,000 had been withdrawn from the account an hour before Defendant's ankle bracelet was cut-off. A relative had cut-off Defendant's ankle bracelet, and an uncle had driven Defendant to Mexico.

In advance of Defendant fleeing, Yesenia attempted to be relieved of the surety obligation. As evidence of her attempts, Yesenia submitted phone records, along with annotated notes, of her contacts with Pretrial Services both before and after Defendant absconded in an effort to alert Pretrial Services of Yesenia's concern that Defendant would flee and to request to be removed as a surety. (See Exh. 1.) Sureties presented email exhibits and testimony that prior to Defendant fleeing, they informed Pretrial Services that they were concerned Defendant was a flight risk. In an email to Pretrial Services Officer Basurto on March 20, 2018 (ten days before Defendant absconded), Yesenia wrote: "I want to speak with you because she told her custodian, Flora Magallon, that she had received permission from you to go out. We have been hearing some inconsistenties [sic] from Evelyn so I just want to fact check with you. We are also concerned because one time that the ankle monitor receiver (i/m not sure of the correct term) was turned off because the power went out, they didn't get a call from pretrial services to check on her until the next morning. So we have a genuine concern of the flight risk." (Exh. 1, emphasis added). Officer Basurto called Yesenia back in response to this email. According to Officer Basurto, Yesenia did not say that she wanted to be removed as a surety or tell Officer Basurto that Defendant's children were in Mexico. Officer Basurto testified that there is always a risk of flight with any defendant.

Officer Basurto spoke with Defendant on March 23, 2018 pre-flight, who said she was stressed and uncomfortable living with her aunt/third party custodian and sent her children to live with Defendant's parents. Also, on March 23, 2018, Officer Basurto spoke with one of the third-party custodians, Flora Magallon, who told Officer Basurto that she did not believe Defendant was a flight risk.[2] Indeed, the second third party custodian, Jose Salgado, testified that when he

---

[2] Exhibit 13, in part, is a confirmation email Officer Basurto wrote to Officer Beckwith confirming Officer Basurto's conversation with Flora Magallon: "I just spoke with Ms. Magallon's aunt/custodian with the Spanish language interpreter (quarterly contact) and she stated that she believes Evelyn would benefit from MN counseling. She believes she is stressed

5

spoke to Officer Basurto, around March 23, 2018, he did not say anything to Officer Basurto that Defendant was a flight risk.

Yesenia also contacted Pretrial Services Officer Ryan Beckwith several times to discuss her concerns about Defendant and to be relieved as surety.[3] Pretrial Services Officer Ryan Beckwith testified that, by email on March 23, 2018, he proposed a bail review to the Government's counsel and Defendant's counsel to address release. This email to counsel stated that the surety no longer was willing to post her property, and he proposed a reduction in Defendant's location monitoring because Defendant was compliant with her release conditions.[4]

---

and is wanting to possibly reside elsewhere as she is concerned with all of the court requirements. She did not state that the defendant is wishing to flee or anything but she is stressed with everything and wants her to be put into counseling if possible because she is not a professional and wants her to be able to vent to someone.  Evelyn is doing very good with no issues of concern she only leaves her home for medical appointments for her children and herself and sporadic church requests."

[3] For instance, on March 20, 2018 at 12:39 a.m., Yesenia spoke to Pretrial Services Officer Ryan Beckwith and her annotated note states: "Call to Ryan Beckwith Fresno Pretrial to inquire about process for property reconveyance.  He tells me once I request the reconveyance the court sets a date for us to appear and Evelyn could possible be held in prison until then or until another surety posts bail." On March 22, 2018, at 8:12 p.m., Yesenia called Pretrial Services Officer Ryan Beckwith, leaving a voice mail message, and her annotated note states: "Call to Ryan Beckwith @ Fresno Pretrial. Left voicemail requesting reconveyance of home and expressing concern for Evelyn's kids being with grandmother [in Mexico]." On March 23, 2018, at 11:17 a.m., Yesenia spoke with Pretrial Services Officer Beckwith and her annotated note states: "Ryan asks if we are able to appear to court on Monday or Tuesday the following week.  I tell him yes.  Last time I speak with him and I am left with the impression that Evelyn would be picked up, we would have court early the following week for reconveyance.  No call for court date and Evelyn runs on 3/30/18." Yesenia made other telephone calls to Pretrial Services between March 20 and March 30, 2021 regarding being removed as a surety.  The Court has reviewed all of the annotated notes, but does not summarize those notes here.

[4] Exhibit 13, in part, is an email from Officer Beckwith to Government and defense counsel stating: "I wanted to make you both aware of some issues that have arisen with this defendant. She has been on Pretrial Supervision with Location Monitoring: Home Incarceration since October of 2017.  Since that time, she has been compliant with all of her conditions of release.  It appears that the defendant has had some sort of disagreement with her family and they no longer want her to reside with them in Elk Grove.  Both of her 3rd party custodians are no longer willing to serve as 3rd party custodians and the surety is no longer willing to post her property. . . ." Officer Beckwith's email also proposed that there may be a possible reduction in release conditions: "in addition to the above mentioned issues, we would also be recommending the defendant's location monitoring be reduced to a curfew or removed all together  . . . she has been

6

Officer Beckwith testified that he would not have recommended a reduction in the location monitoring condition if he had been told or he believed the Defendant was a flight risk. In fact, he had spoken to Yesenia before March 23, 2018, and she did not tell Officer Beckwith that she thought Defendant was a flight risk. Yesenia testified that in this conversation with Officer Beckwith, Officer Beckwith told her Defendant "would be picked up." Officer Beckwith disputed this statement, saying that a defendant could not be arrested without a violation petition, and Defendant was not in violation of the pretrial conditions of release. Officer Beckwith testified that he may have told Yesenia that Defendant could go back in custody if there was not a surety. Officer Beckwith testified that no one asked that Defendant be detained during the bail review process.

Yesenia also testified at length as to the online investigation she did, after Defendant absconded, to find information to assist the Marshals Service locate and retrieve Defendant. Yesenia, through email communication and text communication with Deputy Marshals, provided photographs, children's birth certificates, possible email addresses, family names and locations, Defendant's mother's phone number in Mexico, information about Defendant's husband's relatives in Mexico, the school for the Defendant's children in Mexico, among various other pieces of information, about the possible location of Defendant in Mexico.

Deputy Marshals Ink and Garcia both testified as to the information Yesenia provided and testified that Yesenia was cooperative and responsive. The Deputy Marshals tried to confirm information that Yesenia provided that they were able to confirm. However, they said that they were unable to prepare the "target packet" to deliver to the Mexican authorities without an exact address where the Defendant was located in Mexico.[5] They testified that they told Yesenia that they needed "an exact address" for Defendant so that the Mexican authorities can follow up on that information. Deputy Ink testified that the Marshals Service does not have authority to arrest Defendant in Mexico and must coordinate with the Mexico International Liaison for approval and

---

compliant with all of her conditions of release."

[5] Deputy Garcia testified that a target packet consists of an arrest warrant, a current photograph, a birth certificate and a confirmed address.

authorization by Mexican authorities for investigative conduct in Mexico. Deputy Ink testified that the Mexico International Liaison requires "a confirmed address" for Defendant for any further investigation or arrest. Since the Marshals do not have a confirmed address where Defendant is located, the Mexico International Liaison recently stated that the case is at an "impasse."

On cross-examination by the Government, Yesenia acknowledged that the bond had been explained to her, she understood that if Defendant violated, then the bond would be forfeited, and she agreed that she willingly posted the bond as surety for Defendant's release.[6]

## II.     Legal Standard Rule 46(f) [7]

### A.  Forfeiture is Mandatory

A bail bond is a contract between the government and the defendant and the surety. *United States v. Lujan*, 589 F.2d 436, 438 (9th Cir.1978), *cert. denied,* 442 U.S. 919 (1979); *United States v. Plechner*, 577 F.2d 596, 598 (9th Cir.1978). As with any other contract, the liabilities of the parties under the contract depend upon the intention of the parties as evidenced by the wording of the contract. *United States v. Morales*, 91 F.R.D. 169, 171 (D.P.R.1981). The language of the bond contract is to be strictly construed in accordance with its terms. *Lujan*, 589 F.2d at 438.

Federal Rule of Criminal Procedure 46(f)(1) commands that "the court must declare the bail forfeited if a condition of the bond is breached." If there is a breach of a condition of a bond, "the district court shall declare a forfeiture of the bail." *United States v. Nguyen*, 279 F.3d 1112, 1115 (9th Cir. 2002), *cert. denied*, 537 U.S. 888 (2002). "The forfeiture is thus mandatory." *Id.*

---

[6] Surety Juan Guerrero did not testify at the evidentiary hearing. Counsel did not argue or present evidence that surety Juan Guerrero's position is any different than his wife's, Yesenia Guerrero. Therefore, these findings and recommendations apply equally to Juan Guerrero.

[7] In arriving at these findings and recommendations, the Court carefully reviewed and considered all arguments, points and authorities, declarations, testimony, exhibits, objections, and other papers filed by the parties. Omission of reference to an argument, testimony, document, paper, or objection is not to be construed to the effect that this Court did not consider the argument, testimony, document, paper, or objection. This Court thoroughly reviewed and considered the evidence it deemed admissible, material, and appropriate.

Here, it is undisputed Defendant Magallon breached a condition of the bond and her pretrial release. She cut off the ankle monitor, fled to Mexico, and remains a fugitive.[8] Therefore, the mandatory language of Rule 46(f)(1) requires the Court to declare the bail forfeited.

### B. Discretion of the Court - Factors

Even if bail is forfeited, Rule 46(f)(2) permits a court to set aside the forfeiture in whole or in part if surety surrenders the defendant into custody, or "it appears that justice does not require bail forfeiture." "The party seeking to have the court set aside or remit the forfeiture bears the burden of establishing grounds for such action." *United States v. Logan*, No. 95CR1468–IEG, 2009 WL 1605326, at *1 (S.D. Cal. June 5, 2009) (citing *United States v. Cervantes*, 672 F.2d 460, 461 (5th Cir. 1982) ("The burden of establishing grounds for a set aside or remission is on the party challenging the forfeiture.")). The decision whether to set aside or remit a forfeiture rests within the sound discretion of the court. *See United States v. Frias-Ramirez*, 670 F.2d 849, 852 (9th Cir. 1982), *cert. denied*, 459 U.S. 843 (1982); *United States v. Nguyen*, 279 F.3d 1112, 1115 (9th Cir. 2002). Although the court could grant partial remission of the forfeiture if it sees fit to do so, it is not bound to so grant relief. *United States v. Casanova*, 472 F.2d 1223, 1223 (9th Cir. 1973).

The Ninth Circuit considers six non-exclusive factors in determining whether the court should exercise its discretion to set aside or remit the forfeiture of a bond:

> 1) the defendant's willfulness in breaching a release condition; 2) the sureties' participation in apprehending the defendant; 3) the cost, inconvenience, and prejudice suffered by the government; 4) mitigating factors; 5) whether the surety is a professional or a member of the family or a friend, and 6) the appropriateness of the amount of the bond.

*United States v. Amwest Sur. Ins. Co.,* 54 F.3d 601, 603 (9th Cir. 1995). Not all of the factors need to be resolved in the government's favor to deny a request to set aside or remit the bond. *Amwest*, 54 F.3d at 603. In weighing the factors, the court is guided by the primary purposes of

---

[8] Testimony of (1) Flora Magallon; and (2) Pretrial Services Officer Beckwith; Petition for Violation of Supervised Release. (Doc. 30.)

9

the Bail Reform Act: ensuring the defendant's appearance in court and observance of the release conditions. *United States v. Vaccaro*, 51 F.3d 189, 192-93 (9th Cir. 1995); *See U.S.A. v. Gifford*, 423 F. Supp. 3d 819 (C.D. Cal. 2019) (forfeiture of defendant's bail bond had to be set aside in its entirety in interest of justice after he tested positive for drugs in violation of his pre-trial release conditions; although defendant's breach was willful and bond was appropriate, principal purpose of bail bond was to ensure defendant's appearance in court, defendant did not abscond, surety did not assist defendant in committing violations of his bond conditions, any inconvenience to government from defendant's violations was minor, surety thought that bond could be forfeited only in event defendant fled or did not appear for court proceedings, and surety was defendant's sister, not professional bondman).

(1) <u>Defendant's willfulness in breaching a release condition</u>

Here, Defendant Magallon knowingly breached the main condition of the bond. She cut off the ankle location monitoring bracelet and fled to Mexico. (Petition for Violation of Pretrial Release (ECF No. 30), Testimony of Flora Magallon; Testimony of Darryl Walker; Testimony Ryan Beckwith.) Defendant Magallon has not returned and remains a fugitive. Thus, this factor weighs in favor of the Government and against Sureties.

(2) <u>Sureties' participation in apprehending Defendant</u>

The scope of participation by Sureties in assisting the Government in apprehending Defendant is disputed. The Government states that Defendant Magallon is active on social media in Mexico, has a private account, shared by the family and friends, but Sureties have not assisted in getting this information to the Government. The Government contends Sureties have not provided a confirmed address in Mexico for Defendant. On the other hand, Sureties state that they have gone to "enormous efforts" to assist the Government. In testimony by Surety Yesenia Guerrero, she testified as to her ongoing communications with the Marshals Service deputies about information on where to find Defendant in Mexico. Sureties contend that they provided, among other things, the school name and location where Defendant's children are in school in Mexico and thus, where Defendant must be located. Sureties provided other documents to the Marshal's Service to help locate Defendant Magallon.

Given the disputed evidence submitted and that Defendant remains a fugitive, the Court finds this factor weighs in favor of the Government. While Sureties have been active in attempting to locate Defendant, the result is that the information provided by Sureties is insufficient for the Mexican authorities. Defendant has not been apprehended and remains a fugitive. *See Amwest Sur. Ins. Co*., 54 F.3d at 603–04 (rejecting surety's "participation in apprehension" where surety gave the United States marshal the name of defendant's close friends, also names of relatives, and other friends and associates, which along with other sources of the same information, was helpful in eventually finding defendant.).

Sureties contend that the Marshals Service has not done enough to investigate Defendant's location in Mexico. Sureties provided phone numbers of various Defendant's relatives in Mexico, Defendant's child's birth certificate,[9] and the school Defendant's children attended, among other information which could lead to Defendant's whereabouts. Sureties fault the Marshals Service for failing to use investigative tactics Sureties believe are available to the Marshals Service, such as triangulating phone numbers, surveilling locations and searching databases.

As explained in the testimony of Deputy Garcia and Deputy Ink, the Marshals Service does not have investigative authority in Mexico. It must operate through the Mexican authorities who require an exact address of Defendant. The Deputies used the information to the best they could to research using available databases, but the information did not lead to a confirmed address for Defendant. They testified that the school where Defendant's children attend is not considered relevant information to the Mexican authorities because it is not a confirmed address for the Defendant in Mexico. Deputies spoke with the Mexico International Liaison who said that the children's school is irrelevant because it is not directly related to Defendant. Deputy Ink has been told by the Mexico International Liaison that the Mexico International Liaison will not take further steps without a confirmed location.

While Sureties challenge the actions of the Marshals Service in locating Defendant in Mexico, the Court agrees with the Government. The actions of the Marshals Service are not at

---

[9] Yesenia testified that Defendant Magallon had a child while in Mexico.

issue. *United States v. Pastrana*, No. CR 12-1074-JFW, 2013 WL 781938, at *3 (C.D. Cal. Mar. 1, 2013) ("The sureties have not participated in his apprehension and he remains a fugitive.") The information provided to the Marshals Service has not led to the recapture of Defendant.

(3) <u>The cost, inconvenience, and prejudice suffered by the Government</u>

With respect to the third factor, which examines the cost, inconvenience and prejudice suffered by the government, the government does not have to provide a bill of costs, "nor can the cost and inconvenience factor be dismissed simply because they were not substantial." *Nguyen*, 279 F.3d at 1117. The Ninth Circuit has "recognized that where there has been cost and inconvenience to the government ... the amount need not be specified. That is consistent with this court's view that bail bonds are contracts for liquidated damages.... The hallmark of a liquidated damage provision is reasonableness at the time the agreement is made rather than a calculation of actual provable losses when the breach occurs.... A match [between cost to government and the bond] is not necessary and its lack does not require that the bond be remitted in whole or in part." *Amwest*, 54 F.3d at 604-05.

The Government has incurred cost, inconvenience and prejudice. Defendant Magallon has absconded to a country from which it is difficult to locate her and return her for trial. The Government does not know where Defendant is located in Mexico. The Government argues and has presented evidence that resources were, and currently continue to be, expended by the United States Marshals Service to ascertain the whereabouts of Defendant. Defendant Magallon absconded over three years ago. She is charged with large quantities of methamphetamine with the intent to sell, valued at $1.3 million dollars, and it is unlikely that she will return voluntarily to be prosecuted. The Government has been prejudiced because it is unable to bring this Defendant to justice. The Sureties have not challenged this factor. Given the evidence, this factor weighs in favor of the Government.

(4) <u>Mitigating factors</u>

Mitigating factors are the crux of Sureties' argument.

One of the mitigating factors that courts consider is whether the sureties were aware of their obligations under the bond agreement." *United States v. Martinez*, 2013 WL 6002441, at *7

12

(S.D. Cal. Nov. 12, 2013); *see Frias–Ramirez*, 670 F.2d at 853.

Here, at the Defendant's detention hearing on October 3, 2017, the Court informed Sureties of the obligations under the bond. The Court's minutes indicate: "Property owners Yesenia Guerrero and Juan Guerrero both acknowledged they understand the risk of posting their property as collateral." (ECF No. 14); *see United States v. Gallon*, 583 F. App'x 641, 642 (9th Cir. 2014) (The magistrate judge created a bullet-proof record showing that Watson knew the risks she was running by agreeing to post an appearance bond for Gallon secured by her home. The district court did not abuse its discretion in declining to reduce or to mitigate the forfeiture amount.) Sureties then signed the Appearance and Compliance Bond which further informed them of their obligations. Indeed, the Appearance and Compliance Bond specifically notified Sureties of potential forfeiture: "This appearance bond may be forfeited if the defendant does not comply with the above agreement. The court may immediately order the amount of the bond surrendered to the United States, including the security for the bond, if the defendant does not comply with the agreement."[10] (ECF No. 25, p.1) Yesenia testified that the bond had been explained to her, she understood that if Defendant violated, then the bond would be forfeited, and she agreed that she willingly posted the bond as surety for Defendant's release.

As their main argument, Sureties argue that they called multiple Pretrial Services Officers multiple times to inform Pretrial Services that Defendant was about to flee. They repeatedly asked to be removed from the bond.

Sureties' attempt to alert Pretrial Services, or anyone else, of Defendant's potential for flight does not sway in their favor. Sureties presented evidence that they attempted to alert Pretrial Services of their concern that Defendant would flee in the ten-days/week preceding Defendant Magallon's flight. Surety Yesenia presented testimony that she called numerous times to Pretrial Services to tell Pretrial Services that she and her husband were concerned about

---

[10] Sureties argue that the word "may" in the Appearance and Compliance Bond, means "might": "This appearance bond **may** be forfeited . . . The court **may** immediately order the amount of the bond surrendered to the United States, including the security for the bond, if the defendant does not comply with the agreement." The Court rejects this interpretation. Rule 46(f) requires a mandatory forfeiture. In any event, Yesenia testified she understood the bond would be forfeited if Defendant violated her release conditions.

Defendant Magallon's behavior and risk of flight. There was contrary evidence from third-party custodian Jose Salgado that, during this same week before Defendant absconded, he was not concerned that Defendant Magallon would flee. Third-party custodian Flora Magallon also did not express any concern during this same time frame that Defendant would flee.

The Bail Reform Act contemplates a surety to ensure a defendant's appearance and Rule 46(f) does not relieve a surety of his/her obligation at the hint of potential flight. The primary purposes of the Bail Reform Act are ensuring the defendant's appearance in court and observance of the release conditions. *Vaccaro*, 51 F.3d at 192-93. "[B]ail commitments by family members and friends must be real" in order to have the desired effect of inducing a defendant to comply with his or her release conditions. *United States v. Famiglietti*, 548 F. Supp. 2d 398, 408 (S.D. Tex. 2008) (Brazil, M.J.) (applying Ninth Circuit law). "It would impair substantially the court's ability to assess how real the surety's apparent vote of confidence in the defendant was if the surety were permitted to assume that her promises were not likely to be enforced." *Id.* Informing Pretrial Services of the potential of flight does not sway towards release of the Sureties' obligations.

Regardless of whether Sureties told Pretrial Services their concern that Defendant Magallon would flee, it was not within the power of Pretrial Services to remove the bond condition. Only a judge could remove the bond. It is purely speculative that Sureties would be relieved of the bond, given that the Court required a substantial bond to be posted to minimize what eventually occurred: Defendant absconding. Sureties entered into the bond agreement aware of the consequences if Defendant failed to appear.

Sureties assert as a mitigating factor that Defendant was a friend, and Sureties only acted as a surety as a favor to Flora Magallon. This serves as only a weak mitigating factor, for Judge Oberto conducted an examination of Sureties, and Sureties were aware of the risks and obligations of serving as a surety.

Sureties also argue a hardship should the collateral underlying the secured bond be forfeited or the monetary value be assessed against them. They presented evidence that their house is home to Sureties' minor son. The minor son had been diagnosed with Autism in April

2018, although the school district had diagnosed the son sometime before April 2018. The home is set up to address the son's difficulties, including his bedroom, yard and other areas to provide comfort to him. The home is close to Sureties' family who provide help with their son. A $200,000 loss would be a hardship on them and would require Yesenia to take a job and no longer stay at home to care for her son or make necessary purchases for his condition.

The Court is not unmindful or "[un]sympathetic to the consequences a forfeiture may have on the sureties in this case." *Nguyen*, 279 F.3d at 1115. However, in *Nguyen*, the Ninth Circuit rejected the argument that judges should take into account (as a mitigating factor) the effect the forfeiture would have on the sureties. *Id.* at 1115 (rejecting the dissent's concern that both sureties would "lose their homes because of the forfeiture. They are not the criminals in this case. It is tragic when people post bail for a family member in trouble, only to be ruined for their kindness when their kin jumps bail."). Ninth Circuit jurisprudence prevents the Court from considering as a mitigating factor "the effect the forfeiture would have on the sureties-even if that effect would be devastating and the amount of money forfeited to the government clearly was much greater than the costs the government incurred because of the defendant's breach." *See USA v. Murphy*, No. 19-CR-00043Y GRD MR, 2020 WL 790407, at *6 (N.D. Cal. Feb. 18, 2020), citing *Famiglietti*, 548 F. Supp. 2d at 407.

This is a case where the Defendant has not been retrieved and returned to the United States to face charges. The purpose of having a surety is to mitigate against what occurred in this case. Defendant Magallon absconded over three years ago, and it is unlikely that she will return voluntarily to be prosecuted. The fourth factor, mitigating factors, weighs in favor of the Government.

(5) Whether the surety is a professional or a member of the family or friend

The fifth factor draws a distinction between professional sureties on the one hand and family and friends on the other. However, the Ninth Circuit has declined to adopt a "loving relative" exception to bond forfeiture jurisprudence. "We believe that a loving relative ... would be better advised to counsel her ... relation to obey, rather than ignore, court orders." *Nguyen*, 279 F.3d at 1117 n.2.

Sureties contend that they are not making a "loving relative" argument, but are showing that they acted reasonably and appropriately by voicing concern and fears about Defendant Magallon absconding. This factor is a nonfactor.

(6) <u>The appropriateness of the amount of the bond</u>

Sureties do not argue that the amount of the bond is inappropriate.

The Court nonetheless concludes that the amount of the bond is appropriate. Defendant is charged with large quantities of methamphetamine with the intent to sell, valued at $1.3 million dollars. The Ninth Circuit does not require that the bond approximate costs. *Amwest*, 54 F.3d at 604. Regardless, $200,000 for the crimes charged, and valued at the amount by the Government, is an appropriate bond amount.

In sum, the balance of the factors weighs in favor of the Government. Defendant has absconded and remains a fugitive. As explained above, the factors, including mitigating factors, do not weigh in Sureties' favor. Therefore, the Court does not find reason to relieve Sureties from their obligation to do what they promised to do-pay the agreed upon amount if Defendant did not appear.

### III. Conclusion and Recommendation

In accordance with the foregoing facts and analysis, IT IS RECOMMENDED as follows:

1. That Defendant Evelyn Magallon's bail be ORDERED FORFEITED against Surety Yesenia Guerrero and Surety Juan Guerrero;
2. That the facts for each of these Sureties do not support the exercise of discretion to remit the bond in whole or in part;
3. That the Sureties' Application to Reconvey Real Property Held as Security for Bail Bond and to Avoid Forfeiture be DENIED (ECF No. 33); and
4. That the Government's Motion to Enforce the Secured Bond be GRANTED. (ECF No. 67.)

The clerk of the Court is directed to serve a copy of this order on counsel for Sureties Yesenia Guerrero and Juan Guerrero.

///

These Findings and Recommendation will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within **fourteen (14) days** after being served with these Findings and Recommendation, the parties may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." The parties are advised that failure to file objections within the specified time may result in the waiver of the "right to challenge the magistrate's factual findings" on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: **January 6, 2022**            /s/ Barbara A. McAuliffe
                                                              UNITED STATES MAGISTRATE JUDGE