UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>EVELYN MAGALLON,<br><br>Defendant. | No. 1:17-cr-00232-DAD-BAM<br><br>ORDER DECLINING TO ADOPT FINDINGS AND RECOMMENDATIONS, GRANTNG THE SURETIES' REQUEST TO RECONVEY REAL PROPERTY, AND DENYING THE GOVERNMENT'S MOTION TO ENFORCE THE SECURED BOND<br><br>(Doc. Nos. 33, 67, 78) |

On May 2, 2018, sureties Juan Guerrero and Yesenia Guerrero submitted an Application to Reconvey Real Property Held as Security for Bail Bond and to Avoid Forfeiture. (Doc. No. 33.) The government filed an opposition to that motion and the sureties filed a reply. (Doc. Nos. 35, 36.) The assigned magistrate judge held a hearing on the sureties' application on June 11, 2018, at which time the court discussed the need for an evidentiary hearing (Doc. No. 61 at 8) and the matter was continued for a further hearing to July 17, 2018. (Doc. No. 37.) Thereafter, the sureties and the government stipulated to several continuances of the further hearing, at least some of which appear to have been entered in light of the impact of the COVID-19 pandemic. (*See* Doc. Nos. 40, 42, 44 46, 48, 52, 54, 56; *see also* 57.) Eventually, on August 13, 2021, the government filed a Motion to Enforce the Secured Bond because defendant Evelyn Magallon

absconded from pretrial supervision on March 30, 2018.  (Doc. No. 67.)  The sureties filed their opposition to that motion through counsel on October 6, 2021.  (Doc. No. 68.)  The government's motion was noticed for hearing before the assigned magistrate judge on October, 25, 2021.  (*Id.*)

On January 6, 2022, after holding evidentiary hearings on October 25, 2021 and November 29, 2021, the magistrate judge issued findings and recommendations recommending that:  (1) defendant Evelyn Magallon's bail be ordered forfeited against surety Juan Guerrero and surety Yesenia Guerrero; (2) the sureties' Application to Reconvey Real Property Held as Security for Bail Bond and to Avoid Forfeiture be denied; and (3) the government's Motion to Enforce the Secured Bond be granted.  (Doc. No. 78.)  Those findings and recommendations were served on the parties and contained notice that any objections thereto were to be filed within fourteen (14) days after service.  (*Id.*)  Following the granting of an extension of time to do so, the sureties, Yesenia Guerrero and Juan Guerrero, filed objections to the findings and recommendations on February 4, 2022.  (Doc. No. 81.)  On February 18, 2022, the government filed a response to those objections.  (Doc. No. 82.)

In accordance with the provisions of 28 U.S.C. § 636 (b)(1)(c), this court has conducted a *de novo* review of the case.  Having carefully reviewed the entire file, including the sureties' objections and the government's response thereto and for the reasons explained below, the undersigned declines to adopt the pending findings and recommendations.

As the findings and recommendations note, even if bail is forfeited, "Rule 46(f)(2) permits a court to set aside the forfeiture in whole or in part if surety surrenders the defendant into custody, **or** 'it appears that justice does not require bail forfeiture.'"  (Doc. No. 78 at 9.)  "The decision whether to set aside or remit a forfeiture rests within the sound discretion of the court." (*Id.*) (citing *United States v. Frias-Ramirez*, 670 F.2d 849, 852 (9th Cir. 1982)); *see also United States v. Dobadzhyan,* 708 Fed. Appx. 915, 916 (9th Cir. 2017)[1] ("The district court remained sympathetic to the consequences a forfeiture may have on the sureties, and acted well within its considerable discretion in remitting more than half of the total bond.") (internal quotation and

---

[1] Citation to this unpublished Ninth Circuit opinion is appropriate pursuant to Ninth Circuit Rule 36–3(b).

citation omitted); *United States v. Nguyen*, 279 F.3d 1112, 1115 (9th Cir. 2002); *United States v. Stanley*, 601 F.2d 380, 382 (9th Cir. 1979). District courts consider six factors when deciding whether to remit the forfeiture of a bond:

> 1) the defendant's willfulness in breaching a release condition; 2) the sureties' participation in apprehending the defendant; 3) the cost, inconvenience, and prejudice suffered by the government; 4) mitigating factors; 5) whether the surety is a professional or a member of the family or a friend; and 6) the appropriateness of the amount of the bond.

*United States v. Amwest Sur. Ins. Co.*, 54 F.3d 601, 603 (9th Cir. 1995); *see also Nguyen*, 279 F.3d at 1115-16. Although the court finds that in this case the balance of the factors weighs clearly in favor of the sureties, the undersigned focuses in this order primarily on the "mitigating factors" presented by the circumstances of this particular case. "In determining whether there are any mitigating factors, district courts inquire into 'whether [the sureties] should be relieved of their obligations.'" *United States v. Martinez*, No. 11-cr-1445-WQH, 2013 WL 6002441, at *7 (S.D. Cal. Nov. 12, 2013) (quoting *Amwest Sur. Ins. Co.*, 54 F.3d at 604).

As stated above, an evidentiary hearing addressing the circumstances of this case was held over the course of two days, October 25 and November 29, 2021. (*See* Doc. No. 78 at 4.) At that evidentiary hearing attorney Daniel Harrelson appeared on behalf of sureties Yesenia and Juan Guerrero and Assistant United States Attorney Alyson Berg appeared at the hearing on behalf of the government. (*Id.*) The witnesses called to testify at that hearing were the defendant's third-party custodians (Flora Magallon and Jose Salgado), the two Pretrial Services Officers (one from the Fresno office who was the direct supervising officer and one from the Sacramento office) involved in defendant Magallon's supervision while on pretrial release, two Deputy U.S. Marshals, and surety Yesenia Guerrero. (*Id.*)

As an initial matter, the pending findings and recommendations recognize that at the evidentiary hearing, the sureties presented evidence that "they attempted to alert Pretrial Services of their concern that Defendant would flee in the ten-days/week preceding" defendant Magallon's actual flight. (Doc. No. 78 at 13.) For example, "[s]urety Yesenia presented testimony that she

/////

1 called numerous times to Pretrial Services to tell Pretrial Services that she and her husband were
2 concerned about Defendant Magallon's behavior and risk of flight." (*Id.* at 13–14.)

3       Specifically, at the evidentiary hearing, surety Yesenia also testified to the following. As
4 soon as she learned that defendant's children had been relocated to Mexico, Yesenia placed
5 telephone calls to both the Pretrial Services Officers involved in the defendant's supervision.
6 (Doc. No. 75 at 32.) On March 20, 2018, Yesenia emailed the pretrial officer in Sacramento,
7 stating that she (Yesenia) had a general concern that defendant had become a flight risk and asked
8 to be called back. (*Id.* at 35.) When the pretrial officer called her back, Yesenia again expressed
9 that she and her husband had a growing concern that defendant would flee based upon
10 inconsistencies in what the defendant was telling them. (*Id.* at 38.) On March 20, 2018, after her
11 call with the pretrial officer in Sacramento, Yesenia contacted the pretrial officer in Fresno and
12 specifically inquired about the "process to have the[ir] property reconveyed based on [their]
13 concerns." (*Id.* at 39.) Two days later, on March 22, 2018, Yesenia called the pretrial officer in
14 Fresno again and asked him to immediately commence the process for reconveyance based on the
15 continuing suspicious and misleading statements made by defendant. (*Id.* at 41.) According to
16 Yesenia, she later "left a voice mail requesting again the reconveyance and expressing concern
17 because [Magallon's] kids were now with grandmother in Mexico." (*Id.* at 42.) The pretrial
18 officer returned her call and inquired whether she and her husband would be available early the
19 following week[2], presumably for a court appearance, and she confirmed they would be but never
20 received any further response. (*Id.* at 42-43.) No hearing on the request of the sureties to
21 withdraw was ever scheduled. On Friday March 30, 2018, defendant Magallon cut off her ankle
22 location monitoring bracelet and apparently fled to Mexico. (*Id.* at 43.)

23       The pretrial officer from the Sacramento office testified that on March 20, 2018, she had
24 received Yesenia's email and called her back to inquire about her expressed concern that the
25 defendant was planning to flee. (*Id.* at 65-66.) The pretrial officer confirmed that Yesenia told
26 her that the defendant's third-party custodian had shared with the surety that defendant Magallon

---

[2] The Monday and Tuesday referred to would have been March 26 and 27 of 2018.

4

had brought luggage into their home, that the defendant had said her child was going to reside in Modesto but the surety had learned that the child had in fact been sent to Mexico and that the surety was concerned that the defendant was a flight risk. (*Id*. at 66.) The pretrial officer in Sacramento then "asked [Yesenia] to *immediately* call [the Fresno pretrial officer], as he was the direct supervising officer, and I gave her the number." (*Id*) (emphasis added). The surety followed the Sacramento pretrial services officer's direction in this regard.

The direct supervising officer in the Fresno pretrial office testified at the evidentiary hearing as follows. He confirmed that he had a conversation with surety Yesenia on March 20, 2018, during which the surety expressed "concerns and wanted to talk about the process" for "removing herself as a surety." (*Id.* at 94.) The direct supervising officer "walked [Yesenia] through the process" and acknowledged that Yesenia was calling him because she was very concerned about the protection of her surety. (*Id.* at 95.) The pretrial officer also acknowledged that following his conversation with the surety at 11:00 a.m. on March 23, 2018, that it "was pretty clear" that the sureties wanted to be relieved from the bond. (*Id.* at 101.) Accordingly, on that day, the pretrial officer emailed both the prosecutor and defendant Magallon's counsel, advising them that the sureties were no longer willing to post their property to secure the defendant's release. (*Id*. at 88.) An entire week later, having received no response, on the morning of March 30, 2018, the pretrial services officer again emailed both the prosecutor and the defendant's counsel seeking a response to his March 23 email. (*Id.* at 90.) This time, the prosecutor quickly responded regarding availability for a hearing. However, at 1:58 p.m. on March 30, 2018, the pretrial officer advised the prosecutor and the defendant's counsel as follows: "Never mind. The defendant has removed her location monitoring . . . and she is on the run. A bench warrant has been issued." (*Id.* at 91.)[3]

Based on the testimony and evidence presented at the evidentiary hearing , the undersigned concludes that the court should have been promptly notified that the sureties wished to withdraw and be relieved of their responsibility under the bond. In its reply to the sureties'

---

[3] The court notes that counsel acting on behalf of defendant Magallon would have had little identifiable motivation to respond promptly to the pretrial officer's inquiry in light of its nature.

5

objections to the pending findings and recommendations, the government argues that the defendant's third-party custodians "expressed that they were *not* concerned that [d]efendant would flee." (Doc. No. 82 at 6) (emphasis added). The government apparently relies on the **third-party custodians'** lack of concern as a justification for not setting a hearing on **the sureties'** request to withdraw. The pending findings and recommendations likewise state, in part, that there "was contrary evidence from third-party custodian Jose Salgado that, during this same week before Defendant absconded, he was not concerned that Defendant Magallon would flee." (Doc. No. 78 at 14.)

In the undersigned's view, both the government's argument as well as the reference to the third-party custodians' expressed opinions in the pending findings and recommendations miss both the mark and the point. Whether the third party custodians, Pretrial Services or the prosecuting Assistant U.S. Attorneys believed defendant Magallon was preparing to flee is not relevant to resolution of the question of whether justice requires that the sureties should forfeit the property they posted to secure the defendant's release under these circumstances. While defendant Magallon's custodians may have been less concerned with her flight than the sureties, they were not the ones that stood to lose their home should the defendant flee. Between March 20 and March 23, 2018 the sureties clearly expressed both their concern that defendant Magallon was preparing to flee and their desire to withdraw their property securing her bond. The fact that the case was not promptly placed on the court's calendar by prosecutors after receiving pretrial's March 23, 2018 email or that the court was not advised of their desire to withdraw cannot be held against the sureties.[4]

There was simply nothing more the sureties could have been reasonably expected to do to bring their concerns to the court and to protect their posted property. Certainly the sureties took

---

[4] Had the matter been promptly brought before the court, the sureties most certainly would have been permitted to withdraw and their property would have been reconveyed to them. The only question for the court to then resolve would have been whether other conditions of release (either a substitution of security or other conditions of release) could be fashioned that would adequately address flight risk concerns or, if not, whether the release order should be vacated and defendant Magallon be ordered detained. The original sureties, of course, would have played no role in that determination.

the steps any reasonable non-lawyer could be expected to take in order to both protect their property interest and to alert the court that they no longer wished to serve as sureties on the bond because of the developing risk of flight they believed was posed by defendant Evelyn Magallon. Obviously, the sureties could not arrest or detain defendant Magallon or request that those steps be taken. They properly contacted the pretrial services officers, both of whom understood that the sureties wanted to withdraw. From that point on, the sureties remained at the will of others. The court cannot in good conscience hold the sureties responsible or liable under these circumstances. The court therefore concludes, pursuant to Rule 46(f)(2), justice in this case does not compel bail forfeiture and instead fully supports the granting of the sureties' requested relief in its entirety and the reconveyance of their property.

**CONCLUSION**

Accordingly,

1. The court declines to adopt the findings and recommendations issued on January 6, 2022 (Doc. No. 78);

2. Sureties Yesenia Guerrero and Juan Guerrero's Application to Reconvey Real Property Held as Security for Bail Bond and to Avoid Forfeiture (Doc. No. 33) is granted;

3. The government's Motion to Enforce the Secured Bond (Doc. No. 67) is denied; and

4. The Clerk of the Court is directed to serve a copy of this order on all parties to this action and to reconvey the posted property to the sureties.

IT IS SO ORDERED.

Dated: __**August 10, 2022**__               _/s/ Dale A. Drozd_
                                                                    UNITED STATES DISTRICT JUDGE